**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION**

| | |
|---|---|
| **STACY M. HALL, et al.,** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case Nos. 03-5097-CV-SW-RED |
| | )               04-5003-CV-SW-RED |
| | ) |
| **JASPER COUNTY SHERIFF'S** | ) |
| **DEPARTMENT, et al.,** | ) |
| | ) |
| Defendants. | ) |

## ORDER

Now pending before the Court is Defendants' Motion for Summary Judgment Against Claims Asserted by Laura L. Johnson (Doc. 95), Defendants' Suggestions in Support of Their Motion for Summary Judgment Against Claims Asserted by Laura Johnson (Doc. 96), Plaintiff Laura Johnson's Suggestions in Opposition to Defendants' Motion for Summary Judgment (Doc. 104), and Defendants' Reply Suggestions in Support of Their Motion for Summary Judgment Against Claims Asserted by Laura Johnson (Doc. 112). For all the reasons set forth below, Defendants' Motion is **GRANTED.**

### I. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fry v. Holmes Freight Lines, Inc.*, 73 F. Supp.2d 1074 (W.D. Mo. 1999). When ruling on a motion for summary judgment, the court should view the facts in the light most favorable to the adverse party and allow the adverse party the benefit of all

reasonable inferences to be drawn from the evidence. *See id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Reed v. ULS Corp.*, 178 F.3d 988, 900 (8th Cir. 1999)).

If no genuine issue about any material fact exists, summary judgment is proper because it avoids unnecessary and costly litigation and promotes judicial efficiency. *See id.* (citing *Smith v. Marcantonio*, 910 F.2d 500, 502-03 (8th Cir. 1990); *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir. 1979)). The summary judgment procedure is not a "disfavored procedural shortcut." *Id.* Rather, it is "an integral part of the Federal Rules as a whole." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Cunningham v. Kansas City Star Co.*, 995 F. Supp. 1010, 1014 (W.D. Mo. 1988) (citing *Celotex,* 477 U.S. at 324).

## II. Discussion

Plaintiff Laura L. Johnson has dismissed all claims against all Defendants except for Count V of her Third Amended Complaint (Doc. 36) which alleges liability for a claimed violation of 42 U.S.C. § 1983 based on excessive use of force. A review of the uncontroverted statements of fact contained in Defendants' Motion for Summary Judgment (Doc. 95) and Plaintiffs' Suggestions in Opposition (Doc. 104) to said motion, makes it clear that all of the remaining defendants except for Jeanette Riley and Melissa Rufton are due to be granted Summary Judgment on the claim of excessive force since Plaintiff has made no allegation of fact in regard to the use of force against Plaintiff by any of these other defendants. Therefore, summary judgment shall be entered in favor of Defendants Kevin Blaukat, Don Broers, Jeff Carr, Denita Douglas, Terry Moback, Matt Terry, Craig Preacher, and Jasper County and against Plaintiff Laura L. Johnson. Even if Plaintiff's

2

allegations were considered sufficient to include these defendants, summary judgment would still be entered in their favor for the reasons set forth below.

The first step in addressing an excessive force claim under § 1983 is to determine the "specific constitutional right allegedly infringed by the challenged application of force." *Graham v. M.S. Connor,* 490 U.S. 386, 394 (1989). In the context of alleged excessive force employed against a prisoner, the amount of force employed is properly analyzed under an Eighth Amendment standard. *Whitley v. Albers,* 475 U.S. 312, 318-26 (1986). However, such force will rise to the level of "cruel and unusual punishment" proscribed by Eighth Amendment only if the conduct "inflict[s] unnecessary and wanton pain and suffering." *Stenzel v. Ellis*, 916 F.2d 423, 426 (8th Cir. 1990) (quoting *Whitley*, 475 U.S. at 320). Officers are permitted to use force reasonably "'in a good faith effort to maintain or restore discipline,' but force is not to be used 'maliciously and sadistically to cause harm.'" *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Giving Plaintiff's statement of facts full consideration, the acts that can be reasonably described as a use of force are quite limited. Plaintiff's facts numbered 19 and 20 state that Officer Roughton (the court assumes this is a reference to Defendant Melissa Rufton) tackled Laura Johnson from behind and that after being tackled, Laura Johnson suffered a seizure. Statement of fact number 21 claims that while she was having the seizure, Defendant Riley punched Laura Johnson in the chest and slapped her across the face. Plaintiff makes many allegations against the defendant officers in her statement of facts, however, none of the other allegations identify a particular use of force or a particular defendant who was responsible for the use of such force. The general statement by Plaintiff in her statement of fact numbered 27 that all defendants employed force of some type is

3

basically meaningless to this issue. The allegations against Officer Riley are somewhat confusing in that Laura Johnson claims that when she was in the bubble cell, after her claimed seizure, Lieutenant Riley slapped her two or three times on her face with her open hand. It appears undisputed that the timing for this alleged conduct would be at the time Lieutenant Riley had just assisted in the cutting away of a pair of pants that Plaintiff had tied around her neck in an apparent suicide attempt. She states that Lieutenant Riley told her to stop acting like a baby at the time she slapped her. Laura Johnson's sister, Patti Johnson, states that she saw Officer Riley, "had reached down and punched Laura in her chest, because Laura was having a seizure. Then she slapped her across the face...". (page 42, lines 8-10 of Patti Johnson's deposition) Later, Patti testified that Office Riley said, "Oh Laura, come out of it now. Stop this." Obviously the Johnson sisters are describing two different events.

This is the sum total of the actions alleged to be an exercise of excessive force. Defendants' evidence raises serious questions about whether any of these actions even occurred and described aggressive conduct on the part of Plaintiff and her sister, Patti Johnson. For purposes of this motion, however, the Court will view the facts in the light most favorable to the Plaintiff.

This particular conduct is to be considered in context with the undisputed circumstances that were occurring at the time of these incidents. As noted by the *Stenzel* court, whether the jailor's action rises to the level of excessive force is highly dependant on how the incident is characterized–whether it was a security measure taken to quell a disturbance or merely punishment. *Stenzel,* 916 F.2d at 426. This case involved a situation where jail personnel were attempting to move Laura Johnson and her sister, Patti Johnson, from the female pod area of the jail to their own cell to be locked down. Laura Johnson questioned why she was being moved and began crying.

4

Laura Johnson was upset because of the reason for the lock down and knocked a shampoo bottle to the floor after she had entered her cell. She admits that she was angry when she did this. One can get a sense of the surrounding circumstances of this moment from the deposition testimony of Patti Johnson. Patti Johnson testified that after Laura banged the shampoo on the desk she screamed,

> This is bullshit. She said, 'This is bullshit, Mr. Riley, and you know it, okay?' And then she threw a roll of toilet paper at the wall...at that time the...door flung open, and there was a line of officers...they went straight towards Laura...I stepped in front of Mr. Blaukat to keep them from getting to Laura and I said, 'Look, you're not putting your hands on my sister,' and he told me, 'I'm not going to hurt her.'

At this point, she was tackled by Defendant Rufton and another unidentified officer. Laura Johnson claims to have suffered a seizure at the time she was tackled and has no memory until she remembers sitting on a bed in another cell. While she has a history of seizures and takes medication for it, there is no medical evidence to support that she had a seizure at this time. She claims that she had an injury to her left arm arising out of this incident but no physician has told her that the injury she complained of was caused by this incident. She is not claiming that the alleged seizure caused her any lasting injury.

In regard to Defendant Rufton and the event of tackling Plaintiff Laura Johnson in her cell, it is clear that there is insufficient evidence for Plaintiff to make a submissible case for her claim of excessive use of force. The basic question as set forth in *Treats v. Morgan,* 308 F.3d at 872, is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." It would be an unreasonable review of this factual situation to say that it could be described as malicious or sadistic to cause harm. Plaintiff and her sister, the only witnesses to the claimed excessive force, have admitted that there were no other alleged uses of force than described above. Under the circumstances of a protesting prisoner, who had knocked a shampoo

5

container to the floor and thrown a roll of toilet paper, whose sister had stepped in front of the officer and said she was going to keep then from getting to Plaintiff, and giving consideration to the fact that Defendants were acting in real time and had to make decisions in a matter of seconds as opposed to the deliberate review of facts that are available at this time, this Court cannot find that the "tackle" of Plaintiff by Officer Rufton was anything other than a good faith effort to maintain or restore discipline.

In regard to Defendant Jeanette Riley, there are two factual scenarios to consider, depending on whether it's the testimony of Plaintiff Laura Johnson or the testimony of her sister, Patti Johnson. The Court, in consideration of this motion for summary judgment, considers as true the testimony of Patti Johnson concerning the claimed punch in the chest and slap in the face that she claims she saw administered by Defendant Riley. Since Patti Johnson is the only person who claims to have seen this conduct, one must also consider her own explanation which is that Defendant Riley punched Laura in her chest, "because Laura was having a seizure" and she added that Defendant Riley slapped her across the fact at this time as well. One must conclude that it appeared to Plaintiff's sister that the reason for this conduct by Defendant Riley was in some manner to assist Plaintiff to come out of her seizure. Whether this is good medicine or an appropriate response by Defendant Riley is not the issue. The fact is, this is not the type of conduct that could be considered as malicious or sadistic to cause harm.

The second version of force alleged to have been administered by Defendant Riley is found in the testimony of Laura Johnson who stated that Officer Riley slapped her in the face two or three times and told her to stop acting like a baby. Again, the context of this action is significant. Shortly before the claimed slapping, Laura Johnson had tied her pants around her own neck and was pulling

6

on the legs in what has been described as a suicide attempt. Officer Riley was one of the responders who pulled the pants from her neck. Again, the slapping of Plaintiff in the face under these circumstances may or may not be good medicine or an appropriate response to a person who is emotionally upset and possibly making a suicide attempt. On the other hand, there is nothing about this conduct that appears to be malicious or sadistic. Furthermore, this conduct is not of the type that is claimed to have caused any type of serious or lingering injury.

In short, this Court will not second-guess the judgment of prison officials, given the "wide-ranging deference" in the execution of policies and practices that in their judgment are needed to maintain institution security. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Although such deference is not absolute and would not insulate review of actions taken in bad faith it does not require that a "judge [or] jury freely substitute their judgment for that of officials who have made a considered choice." *Whitley*, 475 U.S. at 322.

Therefore, since it does not appear that "the evidence, viewed in the light most favorable to the Plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard ... described the case should not go to the jury." *Stenzel*, 916 F.2d at 428 (quoting *Whitney*, 475 U.S. at 322). Based on the above considerations and the applicable law as set forth in *Treats*, it is the decision of this Court that summary judgment is due to be granted in favor of Defendants Jeanette Riley and Melissa Rufton and against Plaintiff Laura Johnson.

### III. Conclusion

The Court finds there are no genuine issues of material fact as to Count V of Plaintiff's Third Amended Complaint (Doc. 36). Accordingly, for all the foregoing reasons, it is hereby ORDERED that Defendant's Motion for Summary Judgment Against Claims Asserted by Laura

7

L. Johnson (Doc. 95) in Count V of her third Amended Complaint against Defendants Jeanette Riley and Melissa Rufton is **GRANTED.** Furthermore, it is hereby ORDERED that Defendant's Motion for Summary Judgment Against Claims Asserted by Laura L. Johnson (Doc. 95) in Count V of her third Amended Complaint against Defendants Kevin Blauket, Don Broers, Jeff Carr, Denita Douglas, Terry Moback, Matt Terry, Craig Preacher and Jasper County is **GRANTED**.

IT IS SO ORDERED.

DATE:		October 14, 2005		_/s/ Richard E. Dorr_
						RICHARD E. DORR, JUDGE
						UNITED STATES DISTRICT COURT